STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-905


FERRIS BONNET

VERSUS

LAFAYETTE PARISH SHERIFF, ET AL.


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20072529
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


MARC T. AMY
JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Marc T. Amy, Michael G. Sullivan and Shannon James Gremillion, Judges.


AFFIRMED.


Kay A. Theunissen
Mahtook & Lafleur
Post Office Box 3089
Lafayette, LA   70502
(337) 266-2189
COUNSEL FOR DEFENDANT/APPELLEE:
     Michael J. Neustrom, Lafayette Parish Sheriff

Joslyn R. Alex
Post Office Box 126
Breaux Bridge, LA   70517
(337) 332-1180
COUNSEL FOR PLAINTIFF/APPELLANT:
     Ferris Bonnet

AMY, Judge.

The plaintiff, an inmate, alleged that he sustained injury to his hip while in the custody of the defendant. Citing negligence as his cause of action, he brought suit against the defendant. The trial court granted the defendant's motion for summary judgment. The plaintiff appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

The plaintiff, Ferris Bonnet, was arrested pursuant to an outstanding warrant on May 31, 2006. According to the deposition testimony of the arresting officer, Deputy Bill Lattimore, he located Mr. Bonnet in a shed behind his sister's house. Thereafter, Mr. Bonnet was cooperative in the arrest and walked to the police car without visible signs of injury or pain. The record indicates that Mr. Bonnet was then transferred to the Lafayette Parish Correctional Center ("the correctional center"), wherein the standard booking procedure transpired, including the completion of a medical questionnaire and a medical assessment. Rebecca Fruge, the nurse who assessed Mr. Bonnet, testified that Mr. Bonnet indicated that his blood pressure was high so she noted in his chart that it should be monitored over the next several days. In her deposition, Marla Landry, a nurse at the correctional center, testified as to the standard procedure for booking inmates; she stated that physical examinations of inmates are conducted within two weeks of admittance into the jail. Because Mr. Bonnet's incarceration at the Lafayette Parish Correctional Center only lasted a few days, the physical examination never took place.

The monitoring of Mr. Bonnet's blood pressure led to the discovery that his blood pressure had increased by June 3, 2006. Subsequently, Mr. Bonnet told Nurse Landry that he regularly consumed large amounts of alcohol. This information and the change in his vital signs prompted Nurse Landry to begin a detoxification regimen

per the doctor's standing orders — standing orders that were applicable to all inmates. The correctional center's records indicate that later that day, Mr. Bonnet expressed a desire to kill himself. As a result, he was transferred into a cell where he was monitored by both a deputy in a master control room via a video camera and a deputy outside his cell, who logged Mr. Bonnet's conduct every fifteen minutes. These logs indicate that Mr. Bonnet fell several times and that the reason for the falls appeared to be alcohol withdrawal.

The testimony of Deputy Raisa Martinez reveals that during this period of observation, a nurse was sent into the cell to assess Mr. Bonnet after she observed him fall against his bunk bed; thereafter, it was ordered that he be transferred to the local hospital, University Medical Center ("UMC").

The hospital records reveal that upon his arrival at UMC, Mr. Bonnet stated that he fell off his bicycle three days prior to his incarceration. It was determined that he had suffered an intertrochanteric right femur fracture; consequently, he underwent an open reduction of his right femur and was discharged into the care of a nursing home on June 20, 2006.

Mr. Bonnet brought suit against the Lafayette Parish Sheriff's Department, alleging in his petition that it was negligent in placing him in a situation where he could harm himself, in not restraining him, and in failing to provide proper medical care and treatment. The defendant filed the motion for summary judgment that is now at issue on appeal, contending that Mr. Bonnet's injury pre-dated his incarceration[1]

---

[1] The trial court, in its oral reasons for ruling, stated:

> I believe that I'm going to take the facts in light most favorable to the plaintiff and assume that he fell in the jail cell, even though there is another contention, of course, that he could have fallen off his bike, but I just don't see any act of negligence on the part of the Sheriff's Office. . . . I understand you talked about his mental condition, but there's really not a lot of facts on the record to talk about his

or, alternatively, that if the injury occurred while in the defendant's custody, Mr. Bonnet could not establish a basis for a finding of negligence. The trial court granted the defendant's motion for summary judgment, finding no act of negligence could be established on the part of the defendant. Mr. Bonnet appeals, asserting that the trial court erred in granting the motion.

## Discussion

*Summary Judgment Standard of Review*

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Louisiana Code of Civil Procedure Article 966(C)(2) further explains that in a summary judgment proceeding "the burden of proof remains with the movant," unless "the movant will not bear the burden of proof at trial," in which case, the movant is required to "point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." "Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.*

This court set out the applicable standard of review in *Boykin v. PPG Industries, Inc.*, 08-117, p. 4 (La.App. 3 Cir. 6/18/08), 987 So.2d 838, 842, *writ denied*, 08-1635, 08-1640 (La.10/31/08), 994 So.2d 537, stating:

---

mental condition. So, I'm going to grant the Motion for Summary Judgment.

As noted in the trial court's reasons for ruling, we, too, for purposes of this summary judgment proceeding, construe the facts in favor of the plaintiff and work under the assumption that the injury occurred while the plaintiff was incarcerated. Accordingly, we limit our discussion to a negligence analysis.

Appellate courts review a trial court's grant or denial of a motion for summary judgment using the *de novo* standard of review, under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate in any given case. *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226.

*Burden of Proof*

In *Roy v. Kyrles, Inc.*, 07-1605, p. 5 (La.App. 3 Cir. 5/14/08), 983 So.2d 975, 978, this court set forth the elements that a plaintiff must prove in order to succeed in a negligence suit under La.Civ.Code art. 2315[2]:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

The defendant's motion for summary judgment questioned the plaintiff's ability to establish negligence on the part of the Lafayette Parish Sheriff's Office. In his petition, Mr. Bonnet asserted general acts of negligence, referring to his placement in a cell where he could harm himself and the defendant's alleged improper treatment of him. In his memorandum in opposition to the mover's motion for summary judgment and at the hearing on the motion, he further alleged that the defendant was negligent in giving him medication without rendering a complete physical

---

[2] Louisiana Civil Code Article 2315 provides as follows:

A.    Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

B.    Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease. Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged.

4

examination or pre-determining his tolerance of the medication. Also, Mr. Bonnet contended that the defendant was negligent in its failure to administer treatment and assistance to him after observing him fall several times. We consider these instances of alleged negligence under the duty-risk analysis.

*Duty Element*

The first element of the negligence analysis asks the question of whether a duty was owed to the plaintiff to conform its conduct to a specific standard. Regarding this element, this court stated:

> Generally, a sheriff or police officer owes a general duty to a prisoner to save him from harm and the officer is liable for the prisoner's injury or death resulting from a violation of such a duty. *Barlow v. City of New Orleans*, 257 La. 91, 241 So.2d 501 (La.1970) Also, the supreme court "recognized a general rule that police officers are charged with a higher degree of care for a prisoner's safety and protection when the officers are aware that the prisoner is in an intoxicated state....' *Griffis v. Travelers Insurance Company*, 273 So.2d 523, 525 (La.1973). However, the police officer must only do what is reasonable under the circumstances, and he is only liable for a certain category of risks. *Id.* at 526. The police officer is not the insurer of the safety of the prisoner because that prisoner is intoxicated. *Id.*

*Manuel v. City of Jeanerette*, 95-1202, pp. 4-5 (La.App. 3 Cir. 9/10/97), 702 So.2d 709, 712.

Accordingly, the Lafayette Parish Sheriff's Department owed a duty to Mr. Bonnet to save him from harm, subject to a reasonableness standard.

*Breach Element*

The second element poses the inquiry of whether the defendant failed to conform to the required standard, namely, did the Lafayette Parish Sheriff's Department fail to act reasonably in its dealings with Mr. Bonnet. The deposition of Nurse Landry indicates that inmates are initially seen by a doctor or a nurse for a physical examination within the first two weeks of incarceration. However, Mr.

5

Bonnet was transferred to the hospital before a physical examination was conducted. As one of his alleged acts of negligence, Mr. Bonnet argued that this failure to fully examine him before giving him medicine amounted to negligence on the defendant's part. However, the record does not contain evidence that the defendant strayed from its standard practices of asking for an inmate's medical history, monitoring the inmate accordingly, and adhering to the doctor's applicable standing orders. As noted above, the record shows that Mr. Bonnet was asked questions regarding his medical history, which led to the monitoring of his blood pressure, the start of the detoxification regimen, and ultimately, his placement in a supervised cell after he indicated that he wished to harm himself.

As an inmate in a medical holding cell, Mr. Bonnet was monitored every fifteen minutes by a deputy who logged his activities and behavior. This log reveals a series of movements by Mr. Bonnet and catalogues several falls, one with "withdrawal" listed as a reason. Deputy Lawrence Williams was one of the officers who monitored Mr. Bonnet in the medical holding cell. His affidavit states that after the falls, Mr. Bonnet did not appear to need assistance, nor did he request it. He added that if Mr. Bonnet had appeared injured, he would have engaged the intercom system to speak to Mr. Bonnet, requested medical assistance, and logged the request. However, the record does not indicate that Mr. Bonnet was in any apparent pain, nor does it contain any notes regarding any need or request for assistance.

Further, Deputy Raisa Martinez, another deputy who monitored Mr. Bonnet, explained that though she observed him lying on the floor, such conduct was not uncommon and that if he would have appeared to need assistance, she would have summoned it and logged such a need in his observation file. She further testified that

6

when he fell against his bunk bed, she sent a nurse to assess him as a precaution. This assessment is what ultimately led to Mr. Bonnet's transfer to UMC, where it was discovered that he had a fractured femur, which led to eventual treatment.

Mr. Bonnet also argues that the defendant acted negligently in not using restraints to keep him from harming himself, especially since they knew he was suffering from alcohol withdrawal. However, Robert Reardon, the director of administration of the Lafayette Parish Correctional Center, whose job it is to implement the policies used at the jail, stated in his affidavit that restraints "are only utilized in extreme situations where there is a risk of serious and immediate harm to the inmate." He elaborated that Mr. Bonnet's situation did not warrant the use of restraints, particularly because he was undergoing alcohol detoxification and restraints could have inhibited or delayed medical treatment in the event a complication, such as a seizure, would have occurred.

Based on our review of the record, we find that the parties' submissions demonstrate Mr. Bonnet's lack of factual support for at least one element of negligence: the defendant's failure to conform its conduct to an appropriate standard. Considering the affidavits, testimony, and evidence before us, we find that there is no genuine issue of material fact regarding the contention that the defendant breached its duty of using reasonable care in keeping the plaintiff safe. Because the duty-risk negligence analysis requires proof of each element, our finding of the absence of one element pretermits discussion of the remaining elements. Accordingly, Mr. Bonnet's assignment of error is without merit.

**DECREE**

For the foregoing reasons, the grant of summary judgment in favor of the Lafayette Parish Sheriff's Department is affirmed. All costs of these proceedings are assessed against the plaintiff, Ferris Bonnet.

**AFFIRMED.**